UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CR 172 CDP |
| | ) | |
| FERNANDO RAMOS-LOPEZ | ) | Defendant No. 7 |
| | ) | |
| Defendant. | ) | |

## ORDER – WAIVER OF POTENTIAL CONFLICT OF INTEREST

Currently before the Court is the government's Motion For Inquiry Into Potential For Conflict of Interest (hereinafter "Motion for Inquiry"). The potential conflict at issue involves two separately filed, but related, criminal cases, both pending before the Honorable Catherine D. Perry. See United States v. Fernando Ramos-Lopez, 4:16 CR 172 CDP, and United States v. Israel Angeles-Montezuma, S1-4:16 CR 426 CDP (JMB).[1] Pretrial proceedings in the Angeles-Montezuma matter have been referred to United States Magistrate Judge John Bodenhausen, pursuant 28 U.S.C. § 636(b). Substantially identical orders will be entered in both cases. Counsel of record for Ramos-Lopez is Mario DiSalvo, who is admitted pro

---

[1] Each case involves allegations of methamphetamine trafficking. Broadly speaking, Ramos-Lopez is accused of being involved in a drug trafficking event that is one of several more events at issue in Angeles-Montezuma's case, which alleges a large drug trafficking conspiracy.

hac vice.  Counsel of record for Angels-Montezuma is Yan Shrayberman, who is also admitted pro hac vice.

On March 6, 2017, on the basis of the information in the government's Motion for Inquiry, the Court held an attorney's only status conference with the participation of Messrs. DiSalvo and Shrayberman, Assistant United States Attorney ("AUSA") Sirena Wissler, District Judge Perry, and Magistrate Judge Bodenhausen.  During the status hearing, Ms. Wissler described the general circumstances leading up to her Motion for Inquiry, and Mr. DiSalvo confirmed that, although he had not entered his appearance on behalf of Angeles-Montezuma, he was assisting in Angeles-Montezuma's representation with Mr. Shrayberman.  As a result of the March 6th status conference, the Court scheduled separate conflict hearings for Defendants Ramos-Lopez and Angeles-Montezuma.

### RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

**I.    U.S. v. Fernando Ramos-Lopez – 4:16 CR 172 CDP**

On April 11, 2016, Ramos-Lopez[2] and several other individuals were arrested on a federal complaint (case no. 4:16 MJ 6037 PLC) related to the seizure of more than 50 pounds of suspected methamphetamine in the Eastern District of Missouri.  On April 20, 2016, the Grand Jury returned an indictment charging

---

[2] Unless otherwise indicated, all references to Ramos-Lopez herein refer to Fernando Ramos-Lopez.  The indictment in case no. 4:16 CR 172 CDP also charges Juan Ramos-Lopez with the same offense.

eight individuals, including Ramos-Lopez, with possession with intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. § 841.

William Margulis was initially appointed to represent Ramos-Lopez in connection with the complaint. On April 21, 2016, R. Tyson Mutrux entered his appearance on behalf of Ramos-Lopez and Mr. Margulis withdrew. Mr. Mutrux represented Ramos-Lopez through the primary pretrial proceedings. On November 17, 2016, the Court granted Mr. DiSalvo' motion for leave to appear pro hac vice on behalf of Ramos-Lopez. Ramos-Lopez's trial is currently set for June 26, 2017.

On February 27, 2017, AUSA Wissler filed the government's Motion for Inquiry in Ramos-Lopez's case.

**II.     U.S. v. Israel Angeles-Montezuma – S1-4:16 CR 426 CDP (JMB)**

On September 28, 2016, the Grand Jury returned a multi-count indictment alleging, among other violations, a large-scale methamphetamine trafficking conspiracy involving 39 named defendants.[3] Angeles-Montezuma is the first named defendant and is charged with one count of conspiracy to distribute and possession with intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 846. Angeles-Montezuma was arrested on

---

[3] On October 12, 2016, the Grand Jury returned a first superseding indictment which added three more defendants, but which did not change the charges or allegations relevant to Angeles-Montezuma.

October 4, 2016, in the Eastern District of California, and eventually removed to this District. Mr. Shrayberman's motion for leave to appear pro hac vice on behalf of Angeles-Montezuma was granted on October 17, 2016. Mr. Shrayberman has been the only counsel of record for Angeles-Montezuma in this District. As noted above, Mr. DiSalvo has been acting as an attorney for Angeles-Montezuma. Angeles-Montezuma's case remains in pretrial proceedings; no trial date has been set.

On February 27, 2017, AUSA Wissler filed the government's Motion for Inquiry in Angeles-Montezuma's case.

### SUMMARY OF STATUS HEARING – RAMOS-LOPEZ

On March 16, 2017, the Court held a Conflict Inquiry Hearing regarding Mr. DiSalvo's representation of Ramos-Lopez while he is also assisting with Angeles-Montezuma's representation. Ramos-Lopez was present with Mr. DiSalvo. The government was represented by AUSA Wissler and AUSA Jeannette Graviss. Also present was conflict-free standby counsel Hal Goldsmith.

Ms. Wissler described the circumstances leading her to conclude that a potential conflict of interest exists due to Mr. DiSalvo formally representing Ramos-Lopez while simultaneously advising Angeles-Montezuma.[4] Ms. Wissler

---

[4] The Court has undertaken an independent review of the record, including the charges and identification of arguably suppressible evidence, and concludes that the alleged drug

4

noted that the government was not seeking to disqualify Mr. DiSalvo or any other attorney at this time.

Mr. DiSalvo explained, in substance, that he had did not believe there was any actual conflict of interest and that he had discussed the matter with Ramos-Lopez. Mr. DiSalvo represented that both he and Mr. Shrayberman had determined that there was no conflict. Mr. DiSalvo further represented that he had explained to both Ramos-Lopez and Angeles-Montezuma what a conflict is and that both defendants understood him. Mr. DiSalvo stated that the defenses for the defendants were completely different. Mr. DiSalvo advised the Court it was his belief that Ramos-Lopez wanted to waive any potential conflict of interest and wanted to continue with Mr. DiSalvo's representation.

The Court also advised Ramos-Lopez of his right to have effective, conflict-free representation. The Court provided numerous examples of how Mr. DiSalvo's representation of Ramos-Lopez and Angeles-Montezuma might result in a conflict of interest. Ramos-Lopez was advised that conflicts are difficult to predict and that there could be adverse consequences for him if he proceeds despite the potential for a conflict of interest. Ramos-Lopez was also advised that if an actual conflict arose, his attorney may withdraw from his representation and a new attorney might not have as much time to prepare for trial. Ramos-Lopez was

---

trafficking activity in Ramos-Lopez's case overlaps with some of the alleged drug trafficking activity in Angeles-Montezuma's case.

advised that, if he waived his right to conflict-free counsel, he would be precluded from later arguing that his attorney's representation was defective due to a conflict of interest.

After hearing the statements of AUSA Sissler and Mr. DiSalvo, and after being advised of his rights and the risks of potential conflicts of interest, Ramos-Lopez unequivocally stated his desire to waive any conflict and continue with Mr. DiSalvo's representation.

Before accepting Ramos-Lopez's waiver, the Court allowed Ramos-Lopez to consult privately with standby counsel Hal Goldsmith. Mr. Goldsmith reported to the Court that he had advised Ramos-Lopez of the risks associated with joint representation, that he believed Ramos-Lopez understood his rights and risks, and that Ramos-Lopez desired to continue with Mr. DiSalvo's representation.

The Court accepted Ramos-Lopez's waiver of the potential for a conflict of interest.

### SUMMARY OF STATUS HEARING – ANGELES-MONTEZUMA

On March 17, 2017, the Court held a Conflict Inquiry Hearing regarding Mr. DiSalvo's providing legal advice to Angeles-Montezuma while he is also formally representing Ramos-Lopez. Angeles-Montezuma was present with Mr. Shrayberman. Mr. DiSalvo was also present. AUSA Wissler and AUSA Jeannette Graviss represented the government. Also present was conflict-free

standby counsel Jeffrey Demerath. The hearing was conducted in substantially the manner same as the March 16th hearing with Ramos-Lopez.

Ms. Wissler described the circumstances leading her to conclude that a potential conflict of interest exists due to Mr. DiSalvo formally representing Ramos-Lopez while simultaneously advising Angeles-Montezuma. Ms. Wissler noted that the government was not seeking to disqualify any attorney.

Mr. Shrayberman explained, in substance, that he had reviewed the relevant law, that he did not believe an actual conflict of interest was likely to arise, and that he had discussed the matter with Angeles-Montezuma. Mr. Shrayberman advised the Court it was his belief that his client wanted to waive any potential conflict of interest and wanted to continue with Mr. Shrayberman's representation. Mr. Shrayberman confirmed that he was lead counsel for Angeles-Montezuma and that he had not communicated with Ramos-Lopez.

The Court also advised Angeles-Montezuma of his right to have effective, conflict-free representation. The Court provided numerous examples of how Mr. DiSalvo's formal representation of Ramos-Lopez while also advising Angeles-Montezuma might result in a conflict of interest. Angeles-Montezuma was advised that conflicts are difficult to predict and that there could be adverse consequences for him if he elects to proceed despite the potential for a conflict of interest. Angeles-Montezuma was also advised that if an actual conflict arose, his

7

attorney may withdraw from his representation and a new attorney might not have as much time to prepare for trial. Angeles-Montezuma was advised that he was free to seek advice from a lawyer other than Mr. Shrayberman (his attorney of record), but that he could not later argue that he received bad advice from that other lawyer in connection with this case because only Mr. Shrayberman has entered an appearance in Angeles-Montezuma's case. Angeles-Montezuma was further advised that, if he waived his right to conflict-free counsel, he would be precluded from later arguing that his attorney's representation was defective due to a conflict of interest. Angeles-Montezuma represented to the Court that Mr. Shrayberman was his lead attorney.

After being advised of his rights and the risks of potential conflicts of interest, and the unpredictability of his situation, Angeles-Montezuma unequivocally stated his desire to waive any conflict and continue with the representation by Mr. Shrayberman and Mr. DiSalvo.

Before accepting Angeles-Montezuma's waiver, the Court allowed Angeles-Montezuma to consult privately with standby counsel Jeffrey Demerath. Mr. Demerath reported to the Court that he had advised Angeles-Montezuma of the risks associated with joint representation, that he believed Angeles-Montezuma understood his rights and risks, and that Angeles-Montezuma desired to continue with Mr. Shrayberman's and Mr. DiSalvo's representation.

The Court accepted Angeles-Montezuma's waiver of the potential for a conflict of interest.

### FINDINGS OF FACT

1. Although Ramos-Lopez and Angeles-Montezuma are charged in separate cases, their cases are related. The allegations in Ramos-Lopez's case reflect a subset of the overall drug trafficking conspiracy charged in Angeles-Montezuma's case. Thus, Mr. DiSalvo's simultaneous representation of Ramos-Lopez and Angeles-Montezuma reflects a "joint representation" situation.

2. There is a potential for a conflict of interest associated with Mr. DiSalvo formally representing Ramos-Lopez while simultaneously advising Angeles-Montezuma. For example, there exists a potential for a conflict of interest should one defendant testify against the other in a future proceeding. The Court cannot say, however, that there currently exists an actual conflict of interest associated with Mr. DiSalvo's representation of both defendants. The defendants' lawyers of record—Mr. DiSalvo and Mr. Shrayberman—both represented to the Court that they do not believe that a potential conflict is likely to ripen into an actual conflict.

3. Ramos-Lopez and Angeles-Montezuma are each competent to make a well-reasoned decision regarding the waiver of a conflict of interest.

4. The government has not requested that any attorney be disqualified and took no position as to whether any potential for a conflict of interest could be waived.

5. Ramos-Lopez and Angeles-Montezuma are each aware of their right to effective assistance of counsel, including representation by counsel free of any conflict of interest, and that there exists a potential for a conflict of interest in this matter.

6. Ramos-Lopez and Angeles-Montezuma are each aware that conflicts can be difficult to predict and that circumstances might arise that would give rise to an unexpected or unanticipated conflict of interest.

7. Ramos-Lopez and Angeles-Montezuma are each aware that, by waiving the potential for a conflict of interest, they may be precluded from raising that issue in future proceedings, including after any conviction.

8. Ramos-Lopez and Angeles-Montezuma are each aware that Mr. DiSalvo could not use information from his representation of Ramos-Lopez to the detriment or benefit of Angeles-Montezuma, and could not use his representation of Angeles-Montezuma to the detriment or benefit of Ramos-Lopez.

9. Ramos-Lopez and Angeles-Montezuma each had the benefit of conflict-free counsel in connection with their respective decisions to waive any conflict of interest.

10. Mr. Shrayberman has not been involved in the representation of Ramos-Lopez.

11. Ramos-Lopez knowingly, voluntarily, and intelligently waived his right to any potential conflict of interest regarding Mr. DiSalvo's simultaneous representation of Ramos-Lopez and Angeles-Montezuma.

12. Angeles-Montezuma knowingly, voluntarily, and intelligently waived his right to any potential conflict of interest regarding Mr. DiSalvo's simultaneous representation of Ramos-Lopez and Angeles-Montezuma.

## LEGAL CONSIDERATIONS AND CONCLUSIONS

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense.'" Wheat v. United States, 486 U.S. 153, 158 (1988). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom [she] prefers." Id. at 159 (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983); Jones v. Barnes, 463 U.S. 745 (1983)). Thus, a defendant's choice of retained counsel is not without limits.

In Wheat, the Court addressed a question similar to that presented in the present case—"the extent to which a criminal defendant's right under the Sixth

Amendment to [her] chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." Id. at 159. In that case, the Court rejected the proposition that "waivers by all affected defendants [necessarily] cures any problems created by the multiple representation." Id. at 160. Rather, the Court affirmed a district court's discretion to reject or accept a waiver of a conflict of interest, based on the informed judgment of the court, after an evaluation of the facts and circumstances of a particular case. Id. at 164. The Court noted trial courts have a duty to inquire into potential conflicts of interests in the context of multiple representation[5] situations, and in so doing, "face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." Id. at 161. If a district court permits the representation to proceed, despite a potential conflict, and counsel's advocacy is impaired as a result, a defendant may claim she received ineffective assistance of counsel. Id. (citing Burger v. Kemp, 483 U.S. 776 (1987)). "On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge" to a defendant's right to counsel of her choice, under the Sixth Amendment. Id.

---

[5] See Fed. R. Crim. P. 44(c) – "Inquiry Into Joint Representation." Although the present circumstances involve two separately charged drug trafficking cases, the cases are so related that the Court concludes that the issues involve, at least in part, a "joint representation" problem and that Rule 44(c) applies.

Therefore, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of a waiver …." Id. at 162. The Court recognized that, in the pretrial context (which is precisely the situation at issue herein), the relationships between defendants "are seen through a glass, darkly." Id. The Court aptly observed the following:

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

Id. at 162-63. Therefore, district courts are given "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or not burgeon into an actual conflict as the trial progresses." Id. at 163.

The present case involves a multiple or joint representation situation—Mr. DiSalvo has entered his appearance and represents Ramos-Lopez and is simultaneously providing legal advice to Angeles-Montezuma, although only Mr. Shrayberman has entered an appearance on behalf of Angeles-Montezuma.

Because Ramos-Lopez and Angeles-Montezuma are charged and will be tried separately, aspects of the issues before the Court also correspond to a successive representation scenario.

Although a trial date is set for Ramos-Lopez, both cases remain at a pretrial stage of their respective proceedings. Thus, "there is of necessity less certainty as to whether conflicts will actually arise and as to the nature of those conflicts." United States v. Agosto, 675 F.2d 965, 970 (8th Cir. 1982);[6] see also United States v. Johnson, 131 F. Supp.2d 1088, 1094 (N.D. Iowa 2001) (quoting same). "Consequently, '[b]ecause the task of assessing the potential for conflict well in advance of trial is such a difficult one, the standards applicable to making that assessment must be flexible." Johnson, 131 F. Supp.2d at 194 (citing Agosto, 675 F.2d at 970).

In Agosto, The Eighth Circuit identified several potential sources of conflicts of interest that can arise in the successive representation scenario that seem apt to the circumstances of Ramos-Lopez and Angeles-Montezuma:

> In the successive representation situation, privileged information obtained from the former client might be relevant to cross-examination, thus affecting advocacy in one of two ways:
>
> > (a) the attorney may be tempted to use that confidential information to impeach the former client; or

---

[6] Agosto also allowed for an immediate appeal of pretrial disqualifications of criminal defense counsel. That aspect of Agosto was abrogated by Flanagan v. United States, 465 U.S. 259, 263 n.2 (1984).

> (b) counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information.
>
> …
>
> The second major possibility of a conflict … is that the attorney's pecuniary interest in possible future business may cause him to make trial decisions with a view toward avoid prejudice to the client he formally represented.

Agosto, 675 F.3d at 971.

"In determining whether a conflict of interest exists, substantial weight is given to defense counsel's representations." United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996) (citing Agosto, 675 F.3d at 972); see also Johnson, 131 F. Supp.2d at 1095 (quoting same). In this case, both Mr. DiSalvo and Mr. Shrayberman represented to the Court that they did not believe any actual conflict of interest exists, and that an actual conflict of interest is unlikely to arise. Furthermore, although the Court finds that a potential for a conflict of interests exists, there is currently no actual conflict of interest.

Finally, in determining whether to accept a waiver of a potential conflict of interest, like the district court in Johnson, this Court will consider the standard used in the Second Circuit. In United States v. Kliti, 156 F.3d 150 (2d Cir. 1998), "the court held that if, after inquiry into the existence of an actual or potential conflict of interest, the court finds that 'the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney.'" Johnson, 131 F. Supp.2d at 1102 (quoting Kliti, 156 F.3d at 153).

With the foregoing principles in mind, and in view of the currently known facts and circumstances, including the record made at the hearings on March 16 and 17, 2017, the Court will exercise its discretion and accept Ramos-Lopez's and Angeles-Montezuma's knowing, voluntary, and intelligent waivers of a conflict of interest. The Court cannot say that the potential conflict of interest in these cases is so severe that no rational defendant would waive it. The Court's decision is influenced significantly by the fact that both Ramos-Lopez and Angeles-Montezuma received the benefit of counsel from independent and conflict-free attorneys and persisted in their respective desire to continue with the joint representation by Mr. DiSalvo.

Accordingly,

The Court accepts Ramos-Lopez's waiver of conflict of interest.

_____
CATHERINE D. PERRY
United States District Judge

Dated this 28th day of March, 2017.